Warders v. Railroad Co.

No. 21,624.

H. GREELEY WARDERS and ETHEL WARDERS, *Appellees*, V. THE
UNION PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Railroad Crossing—Death of Child—Evidence*. There
was evidence from which the jury could determine the financial loss
of the plaintiffs.

2. SAME—*Instructions*. The trial court correctly instructed the jury on
the law concerning the defendant's liability to the plaintiffs for negli-
gently causing the death of their daughter. If the defendant desired
an additional instruction, or a modification of the one given, it should
have submitted such instruction and requested that it be given to the
jury.

3. SAME—*Evidence—Findings*. There was evidence to sustain the find-
ings of the jury.

Appeal from Marshall district court; FRED R. SMITH, judge.
Opinion filed June 7, 1919. Affirmed.

*R. W. Blair, T. M. Lillard,* and *A. M. Hambleton,* all of To-
peka, for the appellant.

*W. W. Redmond,* of Marysville, and *W. J. Gregg,* of Frank-
fort, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs commenced this action to re-
cover damages for the death of their infant child, alleged to
have been caused by the negligence of the defendant at a
crossing of the defendant's railroad and a public highway.
Judgment was rendered in favor of the plaintiffs for $2,400,
and the defendant appeals.

The propositions argued are: first, that the evidence to
show the plaintiff's financial loss was insufficient; second, that
the trial court erred in assuming that the child would have
lived until it attained the age of eighteen years; and, third,
that answers to certain special questions were untrue and
manifested a total disregard of the evidence. These proposi-
tions will be considered in the order named.

1. The defendant contends that "the duty of the plaintiffs
to sustain the burden of proof by presentation of as definite

evidence of the extent of their financial loss as the circumstances of the case would reasonably permit was not discharged." The defendant quotes from a note found in L. R. A. 1916 E, page 147, where the author says:

"It is the duty of the plaintiff to present as definite evidence as the circumstances of the case will reasonably permit. In any event there must be proof of facts and circumstances rendering it reasonably probable that actual, substantial pecuniary damage would result or had resulted to the beneficiaries. There must be more evidence than merely that of the age of the decedent and his death through the wrongful act of the defendant."

The evidence introduced on this question showed that the plaintiffs were the parents of the child; that they lived and worked on a farm; that the child was eighteen months old, and was living with its parents; that it was strong and in good health; and that it was killed by being run over by the defendant's motor car.

The jury, from seeing the father, who testified on the trial, could determine his age. From the fact that the mother had given birth to the child eighteen months previously, the jury could determine that the mother must have been less than fifty years old. From the evidence, and from the facts proved thereby, the jury could determine the life expectancy of the father, the mother, and the child. Mortality tables might have been introduced, but such introduction was not indispensable. (*A. T. & S. F. Rld. Co. v. Hughes*, 55 Kan. 491, 40 Pac. 919; 17 C. J. 1366.) The court could have instructed the jury concerning those tables, although they were not introduced in evidence. (*Railway Co. v. Ryan*, 62 Kan. 682, 64 Pac. 603.) No such instruction appears to have been requested, and the defendant cannot complain of the failure of the court to give one. (*The State v. Rook*, 42 Kan. 419, 22 Pac. 626; *Judy v. Buck*, 72 Kan. 106, 82 Pac. 1104; *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648; *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 326, 150 Pac. 581; *Gailey v. Manufacturing Co.*, 98 Kan. 53, 56, 157 Pac. 431.) It is not contended that all of the evidence outlined was the best evidence that might have been introduced, but it was such evidence as justified the jury in finding in accordance therewith, even if there had been direct evidence introduced contradictory thereto.

2. The defendant complains of the following instruction:

"If, after a full and fair consideration of all the evidence in this case, under the instructions herein given, you, the jury, shall find and believe from a preponderance of the evidence herein, that the death of the minor child of plaintiffs was due to the fault and negligence of the defendant as charged, and without any fault or negligence on the part of the plaintiffs or either of them, and that plaintiffs are entitled to recover in this action, then it would become your duty to ascertain what amount of damages, if any, plaintiffs have suffered, and upon this branch of the case you are instructed that they would be entitled to recover such sum, not exceeding $2,900.00, as you, after a full and fair consideration of all of the evidence in the case, in your judgment honestly exercised, you shall deem to be a reasonable and fair compensation for the value of the service of the minor child during its minority, less the sum that you shall find it would have cost them to support said child until it arrived at that age, to wit, eighteen years of age, and also such reasonable sum as you may find from the evidence in this case they are entitled to as pecuniary benefits they might reasonably have expected to receive from the deceased minor child after she should have attained her majority and during the lifetime of the plaintiffs."

The defendant argues that in this instruction "the trial court assumed as a settled fact that the deceased infant would have lived to attain its majority, and did not instruct the jury to take into consideration the probability or improbability that it would have lived to be eighteen years of age." So far as it went, the instruction stated the law correctly. If the defendant desired an additional instruction, it should have submitted one, and requested that it be given. On account of its failure so to do, the defendant cannot complain. because the instruction was not given.

3. The defendant insists that "the answers of the jury to special questions Nos. 3 and 4 manifest a total disregard of the evidence, and are untrue." The questions referred to, and the answers thereto, are as follows:

"3. At the time the child was struck was it down in the trough of a cattle guard? Ans. No.

"4. Does the evidence show that as soon as the motorman discovered that the object on the track was a child, he did everything that could be done to stop his motor car or train in time to avoid striking it? Ans. No."

It is necessary to consider the evidence upon which the answers to these questions were based. That evidence may be summarized as follows: No one saw the accident except the motorman operating the car and an expert mechanic who was

with the motorman. Each testified, in substance, that they were running about thirty miles an hour; that when about 200 feet from the crossing where the child was killed they saw an object on the track on the cattle guard on the opposite side of the public road; that the object looked like a brown paper sack or a weed; that when they got a little nearer they saw that the object was a child; that the motorman then immediately applied the emergency brake, threw off the power, and sanded the track, but that they struck the child and ran some 200 or 300 feet beyond the crossing before the car stopped; that the track was free from high weeds and the view of the road from the car was unobstructed; that they could see the plaintiffs' house north about 500 feet away by the side of the road; that they did all they could to stop the car immediately on realizing that it was a child that was on the track; and that the child was sitting down between the rails in the trough between the ties at the cattle guard. That evidence was not contradicted, except by circumstances, a summary of which follows: The family of the plaintiffs consisted of themselves and five children, Alta, eighteen years old, Garwood, ten years old, Cecil, four years old, Virgil, three years old, and Evelyn, the child that was killed, eighteen months old. The child was killed in the morning about eight forty-five. The plaintiffs, on that morning, left home and went to perform some labor on another farm some distance across the railroad track. The child wanted to go with them. The small children were left in the care of the daughter Alta, who, on the morning of the accident, after her parents left, was performing household duties and watching the children. The child was killed about fifteen minutes after the parents left. After they had gone, and before the child was killed, Alta saw the four small children playing in the yard on the north side of the house. Two or three minutes after she had last seen the baby, Garwood came and asked Alta if she had seen the baby. Alta went outside the house and saw that the motor car had stopped at a bridge near the crossing. She hunted for the baby, but did not find it, and then saw a crowd gathered at the railroad track. The public road ran north and south, and the railroad from the southeast to the northwest. The car was going from Manhattan to Marysville. A clear view of the public road could be

had for a long distance from the southeast. There was a spot of blood about the size of a dollar on the metal part of the cattle guard; and about three or four tie lengths north of the cattle guard blood and flesh were found on the rail. There the body was found with one leg severed. The trough of the cattle guard was four and one-half inches deep, the rail five or six inches high, and the pilot on the car, from three to five inches above the rail.

These circumstances contradicted the evidence of the motorman and his companion. The child had been gone from the house a very short time when the accident occurred; probably the time was too short for her to reach the railroad track, turn aside on the track, and fall into or seat herself in the trough of the cattle guard. When the child was struck, the motion of the car sent the body and the blood in the direction in which the car was going. The body was either thrown or dragged by the car. If the child was standing on the track when struck, the motion of the car sent the body and the blood in the direction in which the car was going; and the body was thrown or dragged to the place where the leg was cut off. If the child had been sitting in the trough of the cattle guard, probably the body would have been left at or very near that place, and would not have been thrown or dragged very far forward.

That evidence supported the finding of the jury, that the child was not on the cattle guard when it was struck. If the child was not on the cattle guard, it must have been south of that guard, and it is reasonable to conclude that the child was approaching the railroad track during the time the car was approaching the crossing; that the child would have been seen if the motorman and his companion had been carefully watching the railroad track and the highway; and that they would have seen the child in sufficient time to enable them to stop the car and prevent the accident.

The judgment is affirmed.

DAWSON, J. (dissenting): For parents or custodians of children to permit an eighteen-months-old baby to stray on to a railway track is contributory negligence *per se*, and I think a recovery would be barred, even if the railway company were guilty of negligence; but here I discern no proof of negligence on the part of the defendant. I therefore dissent.