No. 27,767.

ARTHUR C. BOWMAN, *Appellee,* v. DR. E. G. COYLE, *Appellant.*

(260 Pac. 643.)

SYLLABUS BY THE COURT.

1. EVIDENCE — *Mortality Tables — Conclusiveness and Effect.* The American table of mortality is not conclusive evidence of the life expectancy of a person, but should be considered with all the other evidence in a case to determine the probable length of life of the person under investigation.

2. TRIAL—*Instructions—Permitting Jury to Answer "We do not know."* It is error for a court to instruct the jury that it may answer special questions submitted "We do not know," where there is evidence from which the facts sought to be elicited by the questions may be found.

3. PHYSICIAN AND SURGEON—*Negligence or Malpractice — Evidence — Reading Nurses' Records in Detail.* In an action against a physician for damages caused by his negligence in administering medicine to the plaintiff, it is error for the trial court to permit the plaintiff to read in detail the nurses' records covering a long period of the treatment of the plaintiff following an operation which had been performed on him to relieve him of a condition that may or may not have been caused by the negligence of the defendant.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 5, 1927. Reversed.

*Charles Bucher,* of Coffeyville, and *Chester Stevens,* of Independence, for the appellant.

*Walter S. Keith* and *Harold McGugin,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to recover $69,250, damages sustained by reason of the negligence of the defendant, a practicing physician, in administering an enema of a twenty-five per cent solution of caustic soda (concentrated lye) instead of an enema of Epsom salts. The plaintiff recovered judgment in the sum of $25,000, from which the defendant appeals.

Special questions were answered by the jury as follows:

"1. Do you find that the area of the burn caused by the caustic soda extended beyond the third valve of Houston? A. Don't know.

"2. If you answer the above question 'yes,' how far beyond the third valve of Houston did the area of the burn extend? A. ———.

"3. Where do you find the stricture was located with reference to the recto-

Damages, 17 C. J. p. 1080 n. 53. Evidence, 22 C. J. pp. 170 n. 40 new, 972 n. 33; 23 C. J. p. 163 n. 13. Mortality Tables, 40 L. R. A. 560; L. R. A. 1918C 1074; 19 R. C. L. 222. Trial, 38 Cyc. p. 1921 n. 27.

Bowman v. Coyle.

sigmoid juncture for which Doctor Robinson operated, on or about September 4, 1926, at the Research Hospital in Kansas City, Mo.? A. A little above the rectosigmoid juncture.

"4. Did the plaintiff recover from the effects of the burn to the extent that he was able to spend some time at his office before he dismissed Doctor Coyle, March, 1926? A. Yes.

"5. If you find for the plaintiff, how much, if anything, do you allow him for the following:

    (a) Pain and suffering.................................. $10,000
    (b) Loss of time ....................................... 2,250
    (c) Medical care and attention ......................... 750
    (d) Punitive damages .................................. ......
    (e) Permanent injury ................................. 12,000

"6. Did Doctor Robinson, on or about November 1, 1926, dismiss the plaintiff as cured? A. Hospital records show he did.

"7. Did Doctor Coyle, immediately upon discovering that he had injected a solution of caustic soda, and thereafter until plaintiff dismissed him, properly, carefully and skillfully treat the plaintiff for the purpose of alleviating and curing said burn? A. Yes.

"8. If you answer the last question 'no,' then state in what respects Doctor Coyle failed or omitted to properly, carefully and skillfully treat plaintiff for the purpose of alleviating and curing said burn? A. ———."

The defendant had been treating the plaintiff for constipation and in so doing had on several occasions administered an enema of Epsom salts. On the occasion in question, the defendant negligently administered an enema of caustic soda, thereby burning the rectum of the plaintiff and causing him pain and suffering. The defendant admitted his negligence and his liability therefor.

The principal issues concerned the distance into the rectum that the caustic soda penetrated, the extent and severity of the burn caused by the caustic soda, the consequent injury, and whether or not that injury was permanent.

1. The defendant complains of the following instructions:

"You are instructed that according to the American table of mortality, the life expectancy of a person 39 years of age is 28.91 years. In other words, the average remaining time that he will probably live will be 28.91 years."

The defendant claims that the court committed error in giving that instruction. The court properly took judicial notice of the American table of mortality, and it was proper to instruct the jury that it could consider that table, with all the other evidence, in arriving at a conclusion concerning the length of time the plaintiff would have probably lived except for the negligent act of the defendant, and in arriving at proper compensation for the permanent

injury sustained by the plaintiff, if any. The instruction was not in any way qualified. It, in effect, told the jury that the life expectancy of the plaintiff was 28.91 years, without any reference to his physical condition at the time of the injury. The life expectancy of a person of ordinary health at 21 years of age is 41.53 years, but the life expectancy of a person 21 years old who is afflicted with cancer, tuberculosis, Bright's disease, or any other of the known diseases with a high percentage of mortality, cannot be 41.53 years.

In 22 C. J. 972 it is said:

"Mortality tables are *prima facie,* but not conclusive evidence of life expectancy. They are to be accepted only as an aid in arriving at such expectancy, in connecting with other evidence bearing on the probable continuance of life, and may have little or no weight where it is shown that the person whose life expectancy is in question is, or was at the time of his death, in ill health, afflicted with desease, or engaged in a hazardous employment."

*A. T. & S. F. Rld. Co. v. Hughes,* 55 Kan. 491, 40 Pac. 919, and *Warders v. Railroad Co.,* 105 Kan. 4, 5, 181 Pac. 604, support this rule. See, also, 8 Ency. of Ev. 642.

The physical condition of the plaintiff, the diseases, if any, from which he was suffering, the mortality tables, and all other pertinent matters should have been considered in arriving at what would have been the plaintiff's probable length of life. The jury should have been so instructed. For these reasons, the instruction given was erroneous.

2. Complaint is made of an instruction concerning answers to special questions. On that subject, the court instructed the jury as follows:

"Certain special questions have been submitted to you to be answered and it is your duty to answer them truthfully and fully, and without any regard as to what effect such answers may have on your general verdict, and your foreman will sign the special questions the same as your general verdict. If from the evidence you are unable to answer any question your answer should be 'We do not know.'"

In *K. P. Rly. Co. v. Peavey,* 34 Kan. 472, 8 Pac. 780, the court said:

"And further held, that the court erred in instructing the jury that they might, under any circumstances, answer special questions of fact by merely saying, 'Don't know.'" (Syl. ¶ 11.)

(*U. P. Rly. Co. v. Fray,* 35 Kan. 700, 708, 12 Pac. 98; *Clark v. Weir,* 37 Kan. 98, 102, 14 Pac. 533; *A. T. & S. F. Rld. Co. v. Cone,* 37 Kan. 567, 577, 15 Pac. 499.)

The instruction was erroneous because there was evidence on which the first question could have been answered. There was evidence which tended to prove that in a human being, beginning at the anus, there are in the lower part of the colon, the first, second, and third valves of Houston and that beyond those valves, there is a portion of the colon known as the sigmoid. The evidence proved that the defendant, for some time after the injury, treated the plaintiff at Coffeyville, where the injury occurred; that thereafter, the plaintiff went to Kansas City, Mo., where he was operated on for the purpose of relieving him of a stricture that existed in the sigmoid portion of the colon; and that following that operation, the plaintiff suffered pain and was in the hospital for a number of weeks, during the major part of which time he was in a precarious condition.

The answer to the first question would have been material because, if the burn caused by the caustic soda did not extend beyond the third valve of Houston, there was evidence which tended to prove that the burn did not produce the condition which made the operation in Kansas City necessary. If that were true, the liability of the defendant would have been decreased greatly. If the question had been so framed as to entrap the jury, or had been so involved that it could not be readily understood, or had concerned any immaterial matter, the question might properly have been refused; but, when submitted, the court should not have instructed the jury that it might answer, "We do not know."

3. The defendant complains of the introduction of the charts made by nurses giving the record of the treatment of the plaintiff while he was in the hospital in Kansas City, a period of about sixty-one days, according to a statement in the brief of the defendant. They gave in detail the condition of the plaintiff while he was in that hospital and recorded practically everything that was done either by the plaintiff or by the nurses for him. It took approximately one whole day to read those charts. That extensive reading of the charts was unnecessary. The nurses could have testified to all that was competent, and if compelled to do so could have refreshed their memory from the charts. Reading the long details of them may have inflamed the minds of the jury against the defendant and may have caused the jury to return a verdict larger in amount than it should have been. Error was committed in permitting the charts to be read.

A number of other questions are presented, but it is not necessary to discuss them.

The judgment is reversed.