THE CHEROKEE AND PITTSBURG COAL AND MINING COMPANY v. JOHN DICKSON.

1. NEGLIGENCE OF MASTER—*Opinion Evidence.* Where one of the principal questions to be tried in the case is whether a coemployee of the plaintiff was a competent and skillful miner, it is error to permit a witness who is himself a skillful miner, over the objection of the defendant, to give his opinion as to the skill and competency of such coemployee.

2. HEARSAY TESTIMONY, *Error in Admitting.* In an action against the principal, proof of declarations or admissions made by an agent with reference to a past occurrence, and not in connection with the performance of any duty or business for his employer, is hearsay testimony, and inadmissible.

*Error from Crawford District Court.*

THIS action was brought by *John Dickson* against *The Cherokee and Pittsburg Coal and Mining Company* to

recover damages for injuries sustained by Dickson while working in the defendant's mine near Frontenac, in Crawford county. William Elwood was the pit-boss in charge of this mine, with power to employ and discharge miners. The petition alleges, and the proof shows, that Dickson was working in what is called the "smoke-room," which is an entry next to the main east entry in the mine. Next south from this smoke-room was a room in which one Gustav Dufresne mined coal. Between the main east entry and the smoke-room there was a pillar of coal about 20 feet wide. Between the smoke-room and Dufresne's room a pillar of coal was left, which the petition alleges should have been five or six feet through, but which was in fact, according to the testimony of the plaintiff's witnesses, only about three feet through. Into this pillar or rib of coal Dufresne drilled a hole, and put in a blast of powder, which he exploded. Instead of throwing the coal out into his room, the blast blew out through the rib into the smoke-room and burned the plaintiff, who was about entering the smoke-room from a cross-cut between the main east entry and the smoke-room. It is charged that Dufresne was unskillful, incompetent and without experience in mining coal by blasting, of which facts the defendant was informed, and that the injury to the plaintiff was the result of the unskillful manner in which the blast was put in. The jury rendered a general verdict in favor of the plaintiff for $2,000, and answered special questions submitted at the request of the defendants, as follows:

"Ques. 1. Was Gustav Dufresne a practical and experienced miner at the time plaintiff was injured? Ans. No.

"Q. 2. If you answer question one in the negative, did the defendant know that he was not? A. Yes.

"Q. 3. Did not Gustav Dufresne fire the shot that injured the plaintiff?    A.  Yes.

"Q. 4. Was Gustav Dufresne a colaborer and fellow-servant with the plaintiff?    A.  Yes.

"Q. 5. Was Gustav Dufresne, on the morning the injury to plaintiff occurred, making an air-course between his room and the smoke-room, under the direction of William Elwood?    A.  No.

"Q. 6. Were any shots fired in the room in which Gustav Dufresne was working, after the shot that burned Dickson?    A.  No.

"Q. 7. Was the break-through made by Dufresne at or near the face of his room?    (Refused, and excepted to by defendant.)

"Q. 8. How long before the 19th of September, 1888, had Dufresne been working in said mine?    A.  Two or three months.

"Q. 9. Did not Gustav Dufresne mine as much coal, and get it out in as good condition as an average miner, and use his tools as an experienced miner?    A.  No."

Judgment was rendered on the verdict for the plaintiff.    The defendant brings the case to this court.

*A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error.

*Morris Cliggitt,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : The defendant in error contends that the record does not contain all the evidence, and that the questions argued by the plaintiff in error are not raised by the record.    There is no recital in the case-made that it contains all of the evidence.    The record shows, after reciting the impaneling of the jury, that "thereupon the trial proceeded, and the following evidence was introduced."    Then follows testimony of witnesses for the plaintiff, after which it

recites that "thereupon the plaintiff, having intro-
duced all of his evidence, rests his case." Then it
shows the filing and overruling of a demurrer to the
evidence ; then that "thereupon the defendant intro-
duced the following evidence," and, after the defend-
ant had rested and the plaintiff introduced rebuttal
evidence, it contains the recital "that thereupon, the
parties having introduced all their evidence, the judge
instructs the jury." We think the fair inference from
these recitals alone would be that the testimony is all
here ; but on page 78 occurs the following :

"Thereupon the plaintiff offers in evidence the
deposition of George Kennedy, as agreed upon by the
parties, which is marked 'Exhibit A,' and made a part
of the files in this case."

No deposition of George Kennedy appears in the
testimony, nor is there any "Exhibit A" in the case,
but just before the acknowledgment of service of the
case of plaintiff's attorney there is a paper, not iden-
tified in any manner, but apparently a copy of a very
brief statement signed by George Kennedy and sworn
to before the clerk. It is possible that this is what is
referred to as the deposition of George Kennedy, but
there is nothing to identify it as such. The case of
*Lebold v. Ottawa County Bank*, 51 Kas. 381, does not
hold that no error with reference to the introduction
of testimony can be reviewed unless all of the testi-
mony is brought to this court. It was merely held
that where a claim of error is based on the facts
shown by the testimony, all the testimony must be
included in the record. The language used in the
syllabus and opinion is perhaps not as accurate as it
should have been. Where error is predicated on the
admission or rejection of testimony, it is only neces-

5—55 KAS.

sary to incorporate so much of the evidence as is necessary to clearly present the points.

The questions presented on the merits relate to the admission and rejection of testimony. In order to warrant a recovery by the plaintiff it was incumbent on him to prove that Gustav Dufresne was wanting in skill as a miner; that this was known to the defendant, or could have been known with the exercise of reasonable care; that the injury to the plaintiff was caused by the improper and unskillful act of Dufresne. To prove the tfirst of these essentials, Richard Wilson was called as a witness for the plaintiff, and, over the objection and exception of the defendant, testified as follows:

"Ques. I will ask you to state if you know Gustav Dufresne? Ans. Yes, sir; I do.

"Q. Do you know his nationality? A. No, sir.

"Q. Can you tell from his name? A. No, I could not.

"Q. Could you give any opinion? A. Yes, sir.

"Q. From his name, from his appearance, and from his conduct, have you an opinion what his nationality was? A. I have.

"Q. What? A. An Italian.

"Q. I will ask you to state, if you know, whether or not Dufresne was a competent coal-miner, from what you have seen of his work or what you have seen of him? A. Yes, sir.

"Q. Was he, or was he not, a competent miner? A. He was not."

On cross-examination this witness testified:

"Q. And you don't know, as a matter of fact, whether he was an experienced or inexperienced miner? A. From his appearance I would judge he was not.

"Q. I am asking you from your own knowledge. A. No, sir; I do not.

"Q. Now, you said from his appearance he was

an inexperienced miner ; what do you mean by that?
A. He worked barefooted and naked. I never saw a
miner in that way in my life before.

" Q. Because of that, you think he was an inex-
perienced miner? A. Yes, sir ; and from others.

" Q. Do you know anything about the coal he took
out? A. No, sir.

" Q. Know anything about how he handled his
tools ? A. No, sir.

" Q. How he drilled? A. No, sir.

" Q. You judge alone from the fact that he worked
barefooted and naked? A. Yes, sir.

" Q. And you want this jury to understand that
this man was inexperienced because he was bare-
footed and naked? A. Yes, sir.

" Q. Without taking into consideration how he
mined, or how he handled his tools? A. That is my
opinion of it."

It also appears from Wilson's testimony that he
himself did not work in the mine while Dufresne was
there, prior to the time of the accident by which the
plaintiff was injured, and it does not appear that he
ever saw him at work in the mine. William Elwood,
a witness for the defendant, testified that Dufresne
was a competent and experienced miner. The jury, in
answering the first question submitted to them, find
that Dufresne was not a practical and experienced
miner. The question we have to answer is whether
where one of the main issues to be tried in the case is
the competency and skill of an employee, witnesses ac-
quainted with him, and with the special employment
in which he is engaged, may give their opinions as to
his qualifications. Where a question as to the skill
of an individual arises incidentally in the course of a
trial, it is not uncommon for witnesses well acquainted
with him and with his calling to testify directly as to
his skill, but in this case it was essential to the plain-
tiff's right of recovery that he should show that Du-

fresne was not a fit person to mine coal because of a want of knowledge and experience as a miner. Experts are usually called to testify with reference to some particular acts or matters of which men in general are not competent to judge, and are permitted to give opinions on matters, concerning which their judgment is superior to that of men in other callings, because of a special line of education and experience. The expressions of opinion are allowed only with reference to those matters concerning which the generality of mankind are not supposed to have sufficient knowledge to judge from a mere statement of such facts and circumstances connected therewith as can be drawn from witnesses. In such cases those having peculiar skill and superior knowledge are permitted to aid the jury by their opinions. But the opinion here asked of Richard Wilson, who appears himself to be an expert coal-miner, is whether another man is an expert miner, and this is in a case where that is one of the main questions to be tried. We do not regard this as the proper mode of inquiry. It would be competent and proper to show what his occupation had been, how much experience he had had as a miner, the general manner in which he did his work, and to show by those who were skilled in the business wherein his work differed from that of a skillful miner. Whether proof of particular unskillful or negligent acts, accompanied by proof of notice thereof to the employer, is permissible or not, it is unnecessary now to determine. It would also be proper to show his general reputation where he worked as to skill. An employer must be presumed to know the general reputation of his employees, though he might not know of particular negligent or unskillful acts. These we deem the general principles to be gleaned from the

authorities, though it must be confessed that they are not entirely harmonious.     In *Butler v. Railroad Co.*, 54 N. W. Rep. 208, it was held by the supreme court of Iowa that, "in an action for death, caused by the alleged unskillfulness of defendant's engineer, a witness cannot testify as to the engineer's skill, since that is an ultimate fact to be determined by the jury." In the cases of *Brabo v. Martin*, 5 La. 275, and *Tullis v. Kidd*, 12 Ala. 648, it was held that the opinion of one witness is inadmissible as proof before a jury of the professional skill of another.     On the other hand, in the case of *Laros v. Commonwealth*, 84 Pa. St. 200, it was held that "it is competent for one expert to testify to the skill of another where the knowledge of the witness is derived from personal observation." It was said in that case by Chief Justice Agnew : "If I have seen a workman doing his work frequently, and know his skill myself, surely if I am myself a judge of such work, I can testify to his skill."     We have examined the cases of *Wright v. Hardy*, 22 Wis. 348 ; *Jones v. Angell*, 95 Ind. 376 ; *Olmsted v. Gere*, 100 Pa. St. 127, none of which are exactly in point.     Some courts hold that, for the purpose of showing incompetency, the prior acts and conduct of the person on specific occasions may be given in evidence accompanied by proof of notice to the employer.     (*Baulec v. Railroad Co.*, 59 N. Y. 356.)     On the other hand, it has been held that proof of particular acts of negligence is inadmissible, and that the employer can only be made liable by proof of general reputation.     (*Frazier v. Railroad Co.*, 38 Pa. St. 104 ; *Hatt v. Nay*, 144 Mass. 186.)     We think it was not proper to allow Wilson to give his opinion to the jury as to the competency of Dufresne as a miner, and especially so as it appeared from

1. Negligence of master— opinion evidence.

the cross-examination that he had no personal knowledge as to Dufresne's experience or skill as a miner.

The plaintiff was recalled as a witness in rebuttal and asked the following questions:

"Ques. 1. You heard Mr. Elwood testify, did you? Ans. Yes, sir.

"Q. 2. I will ask you if in the conversation that Mr. Elwood had with you the evening that you were hurt, that he stated to you substantially, that: 'I was afraid of the Frenchmen myself, they get so excited at shooting times. That is the reason I put them all in one entry.' A. Yes, sir."

This testimony was objected to by the defendant. The general rule is that admissions of an agent, in order to bind the principal, must be made in the course of his employment and in connection with and as explanatory of something that he does by authority of his employer. (*Dodge v. Childs*, 38 Kas. 526; *U. P. Rly. Co. v. O'Brien*, 119 U. S. 99.) Mere narrations of past occurrences, or admissions disconnected from any service for his employer, are subject to the objections which exclude hearsay testimony. Was the admission of the objectionable testimony above mentioned of such importance as to require a reversal of the judgment? The writer inclines to the opinion that in the imperfect condition of the record the errors are not sufficient to compel a reversal. The majority of the court, however, hold otherwise, and that where error is clearly shown with reference to a vital issue in the case, it must be presumed to have influenced the verdict, unless the record affirmatively rebuts the presumption. (*Gilmer v. Higley*, 110 U. S. 47.)

For the errors mentioned in admitting incompetent

testimony, the judgment must be reversed and a new trial ordered.

All the Justices concurring.