THE KANSAS CITY, FORT SCOTT & MEMPHIS RAIL-ROAD COMPANY v. B. F. BLAKER & CO.

No. 13,395. (75 Pac. 71.)

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Action for Damages by Insured against Third Party.* Where an insurance company pays to the insured a loss occasioned by the wrong of a third party, and the value of the property destroyed exceeds the amount paid by the insurance company, the insured may bring an action in his own name against the wrong-doer and may recover the full amount of the loss.

2. RAILROADS—*Property on Right of Way—Liability of Railroad for Destroying Adjoining Property.* A dealer in grain and lumber leased a portion of the right of way of a railroad company on which to build an elevator and warehouses, and it was stipulated that the railroad company should not be liable for the burn-

ing of property erected or stored on the rented premises. The lessee had other property connected with that on the leased premises, which was destroyed by fire negligently set out by the railroad company on the rented premises and which continued from there and burned property not on the right of way. *Held*, that the fact that the railroad company was exempt from liability for the burning of the property on the right of way, which first caught fire, will not relieve it from liability for the negligent burning of the connected property.

3. —————— *Acts of Lessee Held Not to Constitute Contributory Negligence.* The placing of structures on the right of way of a railroad company, which are permitted to remain there with the consent of the company until they are negligently set on fire by a passing locomotive, which fire extends to and burns other and adjoining property, does not constitute contributory negligence on the part of the owner, nor deprive him of the remedy given by law for the negligent burning of property not on the right of way.

4. —————— *Circumstantial Evidence—Case Followed.* The fact that a fire which destroyed property originated in sparks from a passing locomotive may be shown by circumstantial evidence, following the rule of *Railroad Co. v. Perry*, 65 Kan. 792, 70 Pac. 876.

5. —————— *Testimony of Engineman Concerning Spark-arresters.* A person who has been employed as a locomotive engineer for a long time and who is qualified by experience and observation to understand the operation and effect of spark-arresters in locomotives may give testimony concerning the question whether a spark-arrester in first-class condition would prevent the escape from a locomotive of sparks or fire sufficient to ignite and burn property on or near the right of way.

Error from Miami district court; JOHN T. BURRIS, judge. Opinion filed January 9, 1904. Affirmed.

*Pratt, Dana & Black*, and *L. F. Parker*, for plaintiff in error.

*L. C. Boyle*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: B. F. Blaker & Co. recovered a judgment against the Kansas City, Fort Scott & Memphis Railroad Company for the destruction of their

umber-yard at Fontana by fire alleged to have beenl negligently started by an old and defective engine which the railroad company was operating. The fire started on the roof of an elevator owned by B. F. Blaker & Co., which was situated on the right of way of the railroad company, and had been placed there under a lease which had been renewed several times. The lease under which possession was held when the fire occurred, among other things, provided :

"Said second parties agree to use the above-described property for elevator and warehouse only, said premises and all buildings thereon to be used conjunctively for the purpose of receiving, storing and holding freight and property received or transported over lines of party of the first part."

There was a further provision in the lease that the railroad company—

"shall not be held liable for any loss or damage by fire communicated either by sparks from locomotives or otherwise to any property erected or stored upon said rented premises."

Aside from the elevator, the fire destroyed lumber sheds and other structures wholly or partly on the right of way, but on account of the provision in the lease above mentioned no recovery was sought or given for the destruction of property situated on the right of way. The lumber-yard, including structures and material, was insured in the Lumbermen's Exchange, a mutual insurance company, to the extent of $3000. After the fire that company paid B. F. Blaker & Co., as indemnity, $2980. An agreement was made between the insurance company and B. F. Blaker & Co. that the latter should bring an action in their own names and prosecute it to judgment, and of the amount recovered the insurance company should get

three-fourths and the firm the remaining one-fourth. In the pleadings and at the trial the railroad company insisted that the Lumbermen's Exchange was the real party in interest, but it was not made a party, and the action was prosecuted to judgment by B. F. Blaker & Co. alone, who were awarded by the jury $3000 as damages, and there was a further award of $400 as attorney's fees.

It is contended here that the evidence did not establish a right of action in B. F. Blaker & Co., and that

1. Action for damages against wrong-doer —proper party.

the court erred in not sustaining the railroad company's demurrer to the evidence. The fact that the insurance company was not a party plaintiff is the principal ground of this contention. The claim is that as the insurance company had paid the greater part of the loss it was a proper party, and, in fact, the only real party in interest in the result of the action. This question has already received the consideration of the court and sanction has been given to the rule that where the value of the property destroyed exceeds the insurance money paid the action must be brought in the name of the owner and not in the name of the insurance company. (*Railroad Co. v. Insurance Co.*, 59 Kan. 432, 53 Pac. 459.) The rule proceeds on the theory that the insured sustains toward the insurer the relation of trustee, and is well supported by the authorities. (*Norwich Union Fire Ins. Soc. v. Standard Oil Co.*, 59 Fed. 984, 8 C. C. A. 433 ; *Ætna Insurance Co. v. Hannibal & St. Joseph R. R. Co.*, 3 Dill. [C. C.] 1, Fed. Cas. No. 96 ; *London Assurance Company v. Sainsbury*, 3 Doug. 245 ; *Rockingham Mut. Fire Ins. Co. v. Bosher*, 39 Me. 253, 63 Am. Dec. 618 ; *Hart v. Railroad Corp.*, 13 Metc. 99, 46 Am. Dec. 719 ; *Conn. Mutual Life Ins. Co. v. N. Y. & N. H. R. R. Co.*, 25 Conn. 265, 65 Am.

Dec. 571; *St. Louis &c. Railway v. Commercial Ins. Co.*, 139 U. S. 223,·11 Sup. Ct. 554, 35 L. Ed. 154; *Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co.*, 41 Fed. [C. C.] 643.) The rule stated is applicable here, as the value of the property destroyed exceeded the amount paid by the insurance company. In addition to the rule of law which holds the insured in such cases chargeable as trustee, there was a specific agreement between the insured and the insurance company that the former should act and account in the capacity of a trustee to the insurance company, and the recovery would necessarily conclude both parties and effectively bar any other or further recovery against the railroad company for the loss.

It is next contended that no liability exists because the fire was communicated from the elevator to other structures not rightly on the right of way, and thus carried along to property not on the right of way. There was, as we have seen, a provision in the lease exempting the company from loss by fire of property situated on the rented premises. This exemption was **2. Liability for destruction of adjoining property.** not a license, however, negligently to set out fires which might burn the elevator and pass over the right of way destroying other property. B. F. Blaker & Co. assumed the risk of destruction by fire of property on the right of way which was rented and nothing more. There was no release from liability for the negligent destruction of other property, although it may have been connected with that situated on the right of way. It is not necessary to a recovery that the fire should have been directly communicated to the property destroyed, nor will the fact that the fire passed over intervening land in order to reach that destroyed prevent a recovery. It was a continuous fire, negligently set out by

the railroad company, as the testimony of the plaintiff below tends to show, and, under the authorities, appears to have been the proximate cause of the loss for which the action was brought. (*A. T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 15 Am. Rep. 362; *A. T. & Santa Fe Rld. Co. v. Bales*, 16 id. 252. See, also, *Rutherford v. Wabash R. R. Co.*, 147 Mo. 441, 48 S. W. 921.) The other buildings near to or connected with the elevator cannot be regarded as an intervening and independent cause of the injury.

There is a claim that as there was a provision in the lease that the lessee should use the premises for elevator and warehouses only, the maintaining thereon of other structures, like lumber sheds, was unwarranted and to some extent contributed to the injury. The lumber sheds and some other structures wholly or partly on the right of way may not have been warehouses in the strict sense of that term, but the parties to the lease had given practical interpretation to the term and had treated these structures as proper appurtenances. Most if not all of them were on the right of way when the lease was executed and materials shipped over the railroad had been previously stored in them. Aside from that, their existence and location were recognized in the lease itself where it was—

3. Contributory negligence of insured party.

"agreed by parties of the first part that they will at all times leave open and unobstructed, for the passage of wagons and vehicles, a strip of ground sixteen feet wide between their elevator and lumber sheds, parallel with main track of said railroad."

The lumber sheds referred to were manifestly located on the right of way, and the parties contemplated that they should remain there and be used for the purpose of storing lumber and other material shipped over

the railroad. If there had been no such express recognition of the lease, but the structures had been placed or maintained on the right of way with the consent of the company, and from them the fire was communicated to the other property, it would not constitute contributory negligence on the part of the lessees, nor deprive them of the remedy given by law for losses to property not on the right of way, the proximate cause of which was the negligence of the railroad company. (*Sherman v. M. C. R. R. Co.*, 86 Me. 422, 30 Atl. 69; *G. Trunk R. R. Co. v. Richardson et al.*, 91 U. S. 454, 23 L. Ed. 356; 13 A. & E. Encycl. of L., 2d ed., 487.)

It is contended that the evidence of negligence of the railroad company in setting out the fire was insufficient and that some of that received was incompetent. It was mainly circumstantial, but we deem it to have been sufficient to support the verdict. A heavy freight-train passed the buildings destroyed shortly before the fire was discovered. It was running rapidly, working steam, and leaving a trail of smoke behind it. Within a few minutes after it passed persons in the neighborhood saw a patch of fire on the roof of the elevator. No fire was kept in the elevator at the time, as it had been locked up for two weeks before the fire occurred. The wind was blowing from the railroad-track toward the elevator. As far as the testimony goes, no one saw sparks proceeding from the engine and lighting on the building, but there was nothing in the testimony to show that the fire could have arisen from any other source, and the facts recited, in the absence of proof of any other cause, tend to show that the fire was caused by the sparks from the engine, and whether the fire so originated was a proper question for the jury. The effect of circumstantial evidence of this

4. Circumstantial evidence — case followed.

character was before the court in the recent case of *Railroad Co. v. Perry*, 65 Kan. 792, 70 Pac. 876. · After a full consideration and a review of the authorities, it was there held :

"The fact that soon after the passing of an engine a fire starts near a railway-track in an enclosed field, covered at the time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins."

A witness who had been a locomotive engineer for sixteen years was introduced to prove the character and operation of spark-arresters. After describing them, he stated, in answer to an inquiry, that a spark-arrester in first-class condition would prevent the escape from the engine of sparks or fire that would ignite property on the right of way. There was no objection to this testimony on the ground that the witness was not qualified to testify on the subject, but it was that the testimony was upon an ultimate fact which it was the duty of the jury to determine. The witness was qualified, and the testimony related to a matter which is the subject of expert testimony and one which inexperienced persons are not likely to understand. The operation of a spark-arrester and its effect in arresting sparks and cinders passing through it, as well as the length of time that they would continue to burn, could be intelligently told by witnesses who had had special advantages and opportunities for observing the operations of engines and the effect of sparks issuing from engines equipped with the different kinds

5. Testimony of engineman concerning spark-arresters.

of spark-arresters. The opinion, based as it was on experience and observation, was not an ultimate issue in the case, but was an important consideration in the determination of an ultimate issue and was properly admitted.

The case appears to have been fairly submitted to the jury, and although some of the rulings on the instructions are criticized, we find nothing in them which warrants special comment. What has already been said answers most of the objections which were made to the rulings of the court in charging the jury, and we see nothing in them or in other rulings which would warrant us in disturbing the verdict of the jury.

The judgment of the district court is affirmed.

All the Justices concurring.