EDWARD SAUNDERS *et al., as Partners, etc., Appellants,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

No. 17,272.

SYLLABUS BY THE COURT.

1. FINDINGS OF JURY—*Practice, District Court.* Where a party does not present questions of fact to be submitted to a jury he may, if he chooses, adopt as his own the questions submitted by the adverse party and join in the request that they be answered, but it is too late to insist upon this privilege after a general verdict against him has been received and the questions so submitted by the other party have been returned unanswered.

2. ——— *Same.* Special questions presented by the defendant written under the caption:

"INTERROGATORIES PROPOUNDED BY THE DEFENDANT TO BE ANSWERED IN CASE THE VERDICT IS FOR THE PLAINTIFFS"

were submitted to the jury and returned unanswered, the verdict being for the defendant. It is *held* that the submission

Saunders v. Railway Co.

of the questions in this form was not an inducement to the jury to find for the defendant, affording grounds for setting aside the verdict.

3. EXPERT WITNESS—*Evidence—Competency.* The answers of an expert witness concerning the distance to which sparks could be thrown from a certain type of locomotive, and concerning the competency and skill of the engineer in charge of the locomotive which it is alleged caused the fire for which damages were sought, are considered, and without deciding upon the competency of the testimony under the issues presented it is held that it does not appear that the rulings, if erroneous, injuriously affected the substantial rights of the party objecting thereto, and that the judgment can not be reversed therefor.

4. SUBSTANTIAL RIGHTS—*Technical Errors.* The provisions of section 141 of the civil code relating to errors and defects that do not affect substantial rights, and section 581, relating to technical errors and irregularities, are compared and applied.

Appeal from Johnson district court. Opinion filed December 9, 1911. Affirmed.

*Edmond C. Fletcher,* for the appellants.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This was an action to recover damages by fire alleged to have been caused by operation of the defendant's railroad. (Laws 1885, ch. 155, § 1, Gen. Stat. 1909, § 7079.) The verdict was for the defendant.

Two errors are assigned: (1) the refusal of the court to direct the jury to answer certain questions of fact; (2) that incompetent evidence was received. At the proper time the appellee presented questions of fact and asked that they be submitted to the jury. The appellant submitted no questions and made no request or objection concerning those presented by the appellee. On the return of the jury, and when their verdict was read, it appearing that the questions so submitted had not

been answered, the appellant requested that the court should direct the jury to return to their room and answer these questions. This request was refused. The statute provides:

"In all cases the jury shall render a general verdict, and the court shall in any case at the request of the parties thereto or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same." (Civ. Code, § 294.)

If the appellants had so desired, they might have adopted the appellee's questions as their own when they were submitted to the court, or, perhaps, at any time before the jury retired to consider of their verdict, but it was too late, after the jury had returned with a general verdict, to submit questions or to adopt those already submitted by the other party, which would amount to the same thing. It may be that the court, in the exercise of judicial discretion, might have complied with appellants' request and required the jury to answer the questions even then, but the refusal was not an abuse of that discretion.

The questions presented by the appellee were written under this caption:

"INTERROGATORIES PROPOUNDED BY THE DEFENDANT TO
BE ANSWERED IN CASE THE VERDICT IS FOR
THE PLAINTIFFS."

It is insisted by the appellants that this heading, permitting the jury to refrain from answering the questions if their general verdict should be for the defendant, was an inducement to the jury to find for the defendant, and thus avoid the labor and weariness incident to a consideration of the questions. It is not unusual in preparing questions to require an answer to one in case a certain specified answer is made to another, thus: "If you answer the above question in the affirmative, then state," etc. This practice has never been criticised, and the situation now presented is not

Saunders v. Railway Co.

materially different in principle. We do not suppose that jurors will have so little regard for their high duties as to find contrary to their judgment in order to save a little further effort and possible inconvenience; and, besides, the defendant had the right to withdraw its questions when they were returned unanswered. The caption only indicated in advance a purpose to so withdraw them in case a verdict was returned favorable to the party presenting them. In the absence of any showing or indication of prejudice to the appellants, we find nothing in this proceeding of which they can rightfully complain. (*Railway Co. v. Moffatt*, 60 Kan. 113, 121, 55 Pac. 837.)

A master mechanic in charge of the shops of the company at Argentine, who had been a long time in railway service and whose duties as master mechanic, among others, was to oversee or supervise the engine men and to look after engines and repairs upon them, who had been a locomotive engineer, and had also served as foreman of engines, in which latter capacity he had instructed engineers in their duties, was a witness for the appellee. After stating in detail the particulars of his service and experience in railroad business, the witness described the type of engine by which the train in question was drawn when the fire occurred, and in particular the apparatus to prevent the escape of sparks. He was then asked:

"I would like to ask you this question, Mr. Hamilton, knowing this balance compound engine of the 1800 type as you do, whether or not such an engine, running under steam, will throw sparks to a sufficient height to be carried in a moderate wind, for 165 feet from the center of the track, and live long enough to start a fire in combustible matter?"

An objection was made that this was not a proper hypothetical question, and that the witness was not qualified, inasmuch as he had stated that he had never run an engine of this type. The objection was over-

ruled, and the witness answered: "It will not." The witness also testified that he knew Mr. Gallagher, the engineer on the train in question, and had examined him for promotion fifteen or sixteen years before, and knew of his character in running and handling engines ever since. He was then asked the question: "I will ask you to state if you know whether or not he is a careful, competent and skillful engineer?" and answered:

"I consider him a first-class engineer, both in the handling and operation and care of an engine."

This question and answer were objected to on the ground that the testimony was incompetent, irrelevant and immaterial and that the witness was not qualified to answer. These rulings are complained of. Concerning the one first referred to, the testimony objected to is quite similar to that held competent in *Railroad Co. v. Blaker*, 68 Kan. 244, syl. ¶ 5, 75 Pac. 71, although that part of the question relating to the distance that sparks might be carried by the wind and start a fire is somewhat speculative. Much would depend upon atmospheric conditions and the degree of inflammability of the combustible matter referred to, but these considerations must have occurred to the jury in weighing the evidence. The witness was qualified to give testimony upon the substantial matters involved in the inquiry, and it can not be held that the doubtful features of the question led the jury astray in considering the answer.

The other question, concerning the engineer's skill and competency, seems to be objectionable within the principles decided in *Coal Co. v. Dickson*, 55 Kan. 62, 39 Pac. 691, and *Erb v. Popritz*, 59 Kan. 264, 52 Pac. 871. The petition alleged that the servants of the company in charge of the locomotive did "carelessly and negligently permit sparks and coals of fire to escape from said locomotive and fall upon plaintiffs' said property and ignite the same." The charge was

not that the engineer was incompetent and unskillful, but that he was negligent in this instance. It was said in *Erb v. Popritz,* supra, that "the matter of negligence is to be determined by the character of the specific act or omission, and not by the general character for care that the person may sustain. (p. 268.) The appellants do not, however, base their objection to the testimony upon this ground, but say in their brief that to meet the statutory presumption of negligence the burden was upon the railway company to show that the employees operating its engines were competent and skillful. Upon this interpretation of the issue, no good reason appears why an expert may not testify directly to the fact. Wigmore says:

"Testimony of the same sort to *carefulness* or *negligence* of disposition (when in issue or evidential as to an employee or a party) has also usually been received. Testimony to *professional skill,* concerning either party or witness, when furnished by professional persons qualified to know, is also generally regarded as receivable." (3 Wig. Ev. § 1984.)

In *Coal Co. v. Dickson,* 55 Kan. 62, 39 Pac. 691, it was held incompetent to show by one expert miner that another miner was also expert. But in the opinion it was said:

"Where a question as to the skill of an individual arises incidentally in the course of a trial, it is not uncommon for witnesses well acquainted with him and with his calling to testify directly as to his skill." (p. 67.)

Without deciding whether, under the issues and in the situation presented, the evidence was incompetent, we are constrained to hold that if it was erroneously admitted, still the judgment should not be reversed because of such ruling. It can not be supposed that if the jury had found that the fire in this case was caused by the negligent operation of the railway, it would have relieved the company from liability because it believed

that the engineer was generally competent and skillful. Section 581 of the civil code provides:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

This section in the code revision of 1909 perhaps means but little if anything more than was intended by a provision of the old code, continued in the revision, which requires the court to disregard all errors and defects not materially affecting the substantial rights of a party, and providing that no judgment shall be reversed for such errors or defects. (Civ. Code, § 141.) The new provision is, however, a later legislative declaration of a wholesome policy, probably intended to make it more emphatic. It does not authorize this court to substitute its own judgment for that of the jury. (*Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 624, 106 Pac. 1034.) But it does require the court to disregard immaterial errors and rulings that do not appear to have influenced the verdict or impaired substantial rights. The ruling must be prejudicial as well as erroneous, and prejudice must affirmatively appear, or the error will be disregarded. Prejudice may be said to appear when the proceedings show that the court or jury was misled by the error and that the verdict or judgment was probably affected to the injury of the complaining party; and this may appear from a candid examination of the proceedings, in the light of reason and common sense. The term "technical errors" used in section 581 of the code is an elastic one, but it doubtless was in-

tended to mean the same as the expression "errors or defects which do not affect the substantial rights of the adverse party," found in section 141. Rules of procedure and of evidence alike are intended to promote the due administration of justice. Although they may not be disregarded, they must be so interpreted and applied as to facilitate and not defeat the purposes for which they were designed. (*Hopkinson v. Conley*, 75 Kan. 65, 88 Pac. 549.) It certainly does not affirmatively appear upon this record, nor does it seem probable, that the substantial rights of the complaining party were prejudicially affected by the answers given to either of the questions objected to.

If it should be conceded that the testimony objected to was erroneously received, as claimed, the error was of the nature referred to in these provisions of the code, and should be disregarded.

The judgment is affirmed.