No. 20,066.

ROY MURPHY, a Minor, etc., *Appellee*, v. THE LUDOWICI GAS & OIL COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. TRIAL—*Instructions—To be Construed Together.* The whole of the instructions to a jury must be taken into consideration to determine whether or not a part of a sentence taken out of the instructions was erroneous.

2. GAS EXPLOSION—*Personal Injuries—Pain and Anguish.—Permanent Injuries—Instructions.* In an action for personal injury, the failure of the court, in the instructions to the jury, to limit the plaintiff's recovery for pain and anguish and for permanent injury to the amounts alleged for each, will not compel the reversal of a judgment where no instruction fixing such limits was requested.

3. MINOR—*May Recover for Pain and Suffering and Permanent Injury.* An infant can recover damages for pain and suffering and permanent injury caused by the negligent act of another. The failure of the court to limit the recovery, on account of inability to work and earn money, to the time after reaching his majority, will not compel a reversal of a judgment for the infant, where no instruction was requested limiting such recovery.

4. NEGLIGENCE—*Gas Explosion—Injuries—Instructions—Degree of Care Required of an Infant.* Instructions that tell the jury it was the duty

21—96 KAN.

of the plaintiff, an infant, to exercise that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances, that give the rules in regard to the negligence of an adult and the negligence of an infant of tender years, and that tell the jury to determine from all the facts the plaintiff's capacity and the degree of prudence that should be exacted of him, are sufficiently favorable to the defendant.

5. SAME—*Contributory Negligence.* The instructions concerning the contributory negligence of the plaintiff have been examined, and no substantial error is found therein.

6. TRIAL—*Request for Immaterial Findings.* It is not error to refuse to submit questions to the jury which, if answered, can not assist in determining what judgment shall be rendered.

7. GAS EXPLOSION—*Injury to Minor—Verdict Not Excessive.* In an action for personal injury, where the plaintiff was severely burned, suffered intense pain, is permanently disfigured in face and body, and is otherwise permanently injured, a verdict for $12,000 is not so excessive as to compel a reversal or modification of the judgment.

8. SAME—*Care Required in Laying Pipe Line Along Public Highway—Evidence.* One who conveys natural gas in pipe lines laid on the ground in a public highway must exercise the highest degree of care to avoid injury to those using the highway, and in an action for damages caused by the ignition and explosion of natural gas in a public highway, where the explosion was caused by a traction engine being driven over the pipe line and breaking it, and where the pipe line, covered with growing grass and weeds, was laid on the ground, in the highway, about seven feet from a hedge fence along the side of the highway, it was not error to refuse to admit evidence tending to show that others engaged in the transportation of natural gas did so by means of pipe lines laid on the ground in public highways.

9. SAME—*Contributory Negligence.* It is not contributory negligence on the part of one who is ignorant of the existence of a gas pipe line in a public highway to enter upon that highway with a traction engine and fail to look for hidden pipe lines, although in a community where natural gas pipe lines are known to be laid in public roads.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed July 10, 1915. Affirmed.

*George Campbell,* of Coffeyville, *Theodore Schmidt, Frank J. Loesch,* and *Timothy J. Scofield,* all of Chicago, Ill., for the appellant.

*A. R. Lamb,* of Coffeyville, *W. E. Hogueland,* and *G. H. Lamb,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action for damages for personal injury. The plaintiff recovered judgment for $12,000. The defendant appeals.

The defendant was engaged in drilling for gas in Montgomery county, Kansas, and had laid an inch gas pipe line from a gas well on near-by premises to its drilling machinery. This pipe was laid on the surface of a public highway, about seven feet from a hedge fence on the west side of the highway. On the east side was a wire fence. The road was about forty feet wide, about twenty feet of which, in the center, had been graded, leaving shoulders on the sides of the graded work eight or ten inches high. The accident occurred on the 23d day of July, 1914. Growing weeds and grass to the height of about six or eight inches concealed the gas pipe. The plaintiff, a boy fifteen and a half years old, was working for his father, assisting in drawing a threshing machine outfit out of an adjoining field onto the highway at the place of the accident. The plaintiff was seated on the engine, guiding it by the steering gear, under the direction of his father, who was also on the engine controlling the power. The length of the outfit was 30 to 35 feet. The engine was a coal-burning steam engine equipped with a damper to shut off air from the firebox. Two workmen were sent ahead to prepare a way to the road. This they did by pulling staples out of posts that held the wires and standing on the wires so that the engine and separator could pass over them. Neither the plaintiff nor his father, nor any of the workmen, inspected the road for any purpose. The road was approached from a northeasterly direction. To get the threshing outfit into the highway it was necessary to cross the graded portion of the road with the traction engine and get it onto the ungraded portion on the west side. There the engine ran onto the gas pipe. A hind wheel broke the pipe, releasing the gas. The engine's damper was open, and through it some of the escaping gas got into the firebox, when it exploded. The explosion threw the plaintiff from his seat on the engine to the ground in the flame, where he was momentarily unconscious. Upon recovering consciousness he rolled out of the flame, attempted to extinguish the fire in his clothing,

could not do so, ran to one of the workmen, who tore the burning clothing from the plaintiff's body. He was badly burned, although there were no internal burns. He was burned on his knees, on his right hip, on his right side below the arm, on both arms and shoulders, across his breast, and on his face, neck and ears. These burns were of first and second degree; a first-degree burn varying from redness to a blister, and a second-degree being where a portion of the skin is charred or killed. The burn on the right arm was mostly second degree, and on the hip was a second-degree burn several inches square. On the right side of the face, under the jaw and ear and on the rim of the right ear, were burns of second degree. All the rest were first-degree burns. There were no third-degree burns. The burns were very painful. During the first three weeks after his injury the plaintiff was obliged to lie on his back most of the time with his arms extended and supported on pillows, and during the second week for a while it was necessary to grasp his right hand and hold the arm off the bed to relieve the pain. In order to induce sleep, the doctor gave the plaintiff morphine at night during the first two weeks. The right ear had been burned worse than any other part of his body. Abscesses formed in the upper part of this ear, due to infection. There were no other abscesses. About five weeks after the injury there was a swelling in the left leg due to an interference of circulation, possibly due to infection. To correct this condition the doctor advised the use of an elastic bandage on the leg, and the plaintiff was wearing it at the time of the trial. At this time, six months after the accident, all the plaintiff's burns had healed. He had several large scars on his body and in his face. A portion of his right ear was gone. There was a drawing of the skin about the chin, neck, and throat. His scars were exhibited to the jury. The appearance of the plaintiff's face and body does not seem to be described in the record, beyond the statement of the scars left. It does appear that these scars will never entirely disappear, and that the skin tissue of the right arm has been destroyed and can not perform its function. It appears that none of the muscular tissues was burned, but the muscles of the right arm and of the left leg were affected by the burns, and they probably will never be restored to their normal condition.

Murphy v. Gas & Oil Co.

(1) The first complaint is of the following language used in the instructions:

"To entitle plaintiff to a recovery in this action, he must show by the evidence that the injury complained of was occasioned by the carelessness and negligence of the defendant alleged and set up in the petition."

This is about half of the sentence from which it is taken. It is but a small part of the instructions on the defendant's negligence. Neither the sentence from which this quotation is taken nor the whole of the instruction concerning negligence is objectionable. This court has said many times that instructions are to be construed as a whole, and if not erroneous when so construed, no one of them will be held erroneous. (*The State v. Dickson,* 6 Kan. 209; *The State v. Miller,* 35 Kan. 328, 10 Pac. 865; *Lawder v. Henderson,* 36 Kan. 754, 14 Pac. 164; *The State v. Yarborough,* 39 Kan. 581, 588, 18 Pac. 474; *C. B. U. P. Rld. Co. v. Andrews,* 41 Kan. 370, 21 Pac. 276; *Cain v. Wallace,* 46 Kan. 138, 26 Pac. 445; *Hays v. Farwell,* 53 Kan. 78, 35 Pac. 794; *The State v. Atterberry,* 59 Kan. 237, 52 Pac. 451; *Railway Co. v. Brandon,* 77 Kan. 612, 95 Pac. 573; *Meyer v. Rosedale,* 84 Kan. 302, 113 Pac. 1043.) Other cases to the same effect might be cited. The instructions, as a whole, on this subject are not complained of. They appear to state the law correctly.

(2) The next complaint is that the court did not limit the amount of the plaintiff's recovery to $5000 for pain and anguish, and to $10,000 for temporary and permanent injury. The petition alleges damages in the sum of $5000 for pain and anguish, and $10,000 for temporary and permanent injury and incapacity to earn a livelihood. The prayer of the petition is for $15,000 and costs. The court in stating the issues instructed the jury that the plaintiff alleges "that Roy Murphy was severely injured and burned in various parts of his body and suffered intense pain and permanent injury, all to the amount of $15,000, for which he seeks a verdict at your hands." The defendant contends that it was the duty of the court to instruct the jury that the plaintiff could not recover more than $5000 for physical pain and mental anguish, nor more than $10,000 for temporary and permanent injuries. No instruction limiting the amount of the plaintiff's recovery for each of these items to the sum named was given. The abstract does

not show that any such instruction was requested. As far as they went, the instructions on this subject were correct. If the defendant desired other and additional instructions, it should have asked for them. In *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648, this court said:

"A judgment will not be reversed because of complaint that the court did not properly, correctly and fully instruct the jury, where the instructions given correctly stated the law and no request was made for other or additional instructions." (Syl. ¶ 4.)

See cases there cited.

In *Hoyt v. Dengler*, 54 Kan. 309, 38 Pac. 260, this language is found:

"Where no instructions are asked, a failure to make them as full as the plaintiff would like is not ground of error." (Syl. ¶ 1.)

It does not appear that the substantial rights of the defendant have been prejudiced by the failure of the court to instruct the jury concerning this matter. Section 581 of the code of civil procedure requires that all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining shall be disregarded, where it appears upon the whole record that substantial justice has been done by the judgment or order of the court. (*Saunders v. Railway Co.*, 86 Kan. 56, 119 Pac. 552; *Nordman v. Johnson,* 94 Kan. 409, 146 Pac. 1125; *Berhenke v. Penfield,* 94 Kan. 532, 146 Pac. 1187.)

(3) The next complaint also concerns the instructions, and, quoting from the defendant's brief, is as follows:

"They did not limit the recovery for inability, if any, to work and earn money after the accident to the period commencing with plaintiff's 21st birthday, March 5, 1920, plaintiff's father having brought separate suit in the same court against the defendant and having been compensated in full for loss of services of the plaintiff in the case at bar up to that date."

On the amount of recovery the court instructed the jury as follows:

"If you find that the plaintiff is entitled to recover in this case, the next question for your consideration is the measure of his recovery. He may recover for pain and suffering and for permanent injury.

"There is no actual rule for the computation of damages upon claims for permanent disability or for pain and suffering in a case of this kind; the nature and elements of recovery are for physical pain, if any, which

Murphy v. Gas & Oil Co.

has resulted up to the time of the commencement of the action, and if you find that plaintiff is still disabled from such alleged injuries and still suffers pain, such further damages as may appear to you from the evidence to be the natural or probable result of such injuries.

"You should in arriving at your verdict, consider the physical pain, if any, suffered by the plaintiff, the age, physical condition and work of the plaintiff at the time of the alleged injury and his ability at that time to work and earn money, his age, health and physical condition at the time subsequent to the alleged injury and his ability then to work and earn money, as affected, if at all, thereby. In fact you should consider all the circumstances in the light of all the evidence and the instructions of the court."

It is contended that the plaintiff's father is entitled to the plaintiff's services until he is twenty-one years old, and that these instructions permit the plaintiff to recover for his incapacity to work from the time of his injury until he reaches that age. Although the father is entitled to the plaintiff's services until he is twenty-one years old, that does not preclude the plaintiff from recovering damages for the permanent injuries he has sustained. There is no claim in the petition for loss of time or of wages. These instructions permit the plaintiff to recover for pain and suffering and for permanent injury. Nothing else is included. The court instructed the jury to take into consideration the age, health, physical condition, and ability of the plaintiff to work and earn money, both at the time of the injury and afterward. The verdict could not have been properly arrived at without so doing. It is a strained interpretation of these instructions to hold that they include compensation for loss of time and of wages of the plaintiff during his minority. The last part of subdivision 5 of section 285 of the code of civil procedure reads:

"Before reading the instructions to the jury, the court shall, when requested, submit the same to counsel on either side and give counsel a reasonable time to suggest modifications thereof."

The abstract does not disclose that the defendant requested that the instructions be submitted to it before being read to the jury, nor that the defendant suggested any modification thereof or requested an instruction excluding the plaintiff's right to recover for inability to work or earn wages before he was twenty-one years old. No such instruction having been requested, the defendant can not now complain of the failure

of the court to give it. (*Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648; *Hoyt v. Dengler*, 54 Kan. 309, 38 Pac. 260.)

(4) The defendant next contends that the instructions were misleading on the question of the degree of care and prudence to be exacted of the plaintiff. He was fifteen and a half years old. The court instructed the jury that it was the plaintiff's duty to exercise that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances, gave the rule in regard to the negligence of an adult and in regard to the negligence of an infant of tender years, and told the jury to determine from all the facts the plaintiff's capacity and the degree of care and prudence that should have been expected of him. This instruction was properly given.

(5) The last complaint concerning the instructions is that they were misleading on the subject of contributory negligence. The defendant's complaint in this regard is without merit.

(6) The next complaint is that the court erred in refusing to submit to the jury certain special questions requested by the defendant. It was sought by these questions to show that the plaintiff was guilty of negligence in running the engine into the highway and upon the gas pipe without making an examination for the purpose of ascertaining whether or not the threshing outfit could be safely taken into the highway at the place of the injury. So far as the defendant is concerned, the plaintiff had the right to assume that the public highway was a safe place on which to travel, and that he could enter on it at any place along it. Other questions sought to elicit answers to show that the plaintiff could have entered upon the highway at another place with less danger. We think these questions were wholly immaterial.

(7) The next contention is that the verdict of $12,000 is so excessive that it can only be explained on the theory that it was the result of the jury's passion and prejudice. We do not agree with this contention. The plaintiff's injuries were severe. His pain was intense. He is permanently disfigured. He probably will never entirely recover. We can not say that the verdict for $12,000 was excessive.

(8) The defendant contends that it was reversible error for the court to exclude evidence offered to show the general

practice and the usual and customary method of laying gas pipe lines, such as the one in question, on the ground along the sides of highways in rural communities, only burying such pipes where they cross other highways.  The defendant cites a long list of authorities in support of this proposition.  We have examined them.  The rule established by them is concisely stated in 29 Cyc. 609, where this language is found:

"As a general rule custom and usage of well-appointed and well-managed concerns in the business under investigation is competent evidence on the question of the care and diligence required in the proper conduct of the business."

But this rule, as there stated, is modified by the sentence immediately following, which reads:

"This rule is, however, subject to exceptions, among which is the exception that it can not be allowed to contradict matters of common knowledge, or to prove a custom which is so obviously unreasonable or dangerous as to be at once recognized as such by all intelligent persons."

We do not think the rejection of this evidence constituted material error, for reasons which are hereinafter stated.

The defendant contends that it had the right to lay its gas pipes along the highway.  This is correct, under a former decision of this court; but with that right went the obligation to lay the pipes in such a way that no person would be injured by gas escaping therefrom.  This court, in *The State v. Natural-gas Co.*, 71 Kan. 508, 80 Pac. 962, said:

"As against the state, a natural-gas company incorporated under the laws of Kansas for the purpose of transporting and distributing natural gas for fuel, light, and power, may bury its pipe-line in the public highway, where such use does not inconvenience, endanger or obstruct public travel." (Syl.)

To come within this rule, the defendant should have buried its pipe line in the public highway.  To show what the legislative idea is concerning transporting natural gas along public highways we cite section 3904 of the General Statutes of 1909, which reads:

"Whenever any tract of land not in an incorporated city shall be laid out in lots or other subdivisions as now required by law, the owner of such lands or his assigns is authorized to lay, maintain and operate natural-gas pipes along and across the streets and other grounds dedicated by such owner to public use for the purpose of furnishing natural gas for light and fuel to the residents of said land, and for such purpose is authorized to lay, maintain and operate natural-gas pipes across any

public highway: *Provided*, That the said pipes shall be laid under the surface of said streets, public grounds, and highways, and that said streets, grounds and highways shall be restored so as not to impair their usefulness: *And provided further*, That nothing herein shall be construed as granting to such owner or his assigns the exclusive right to furnish said residents with natural gas for light and fuel."

It can hardly be contended that gas operators laying pipe lines in public highways for private purposes have greater rights than gas companies laying the same kind of pipe for public service. A case closely parallel with the one we are now considering is *Indiania, etc., Gas Co. v. McMath,* 26 Ind. App. 154, where the court said:

"One who maintains an exposed gas pipe through which natural gas is flowing on the surface of the ground within the limits of a public highway does an unlawful act and is liable in damages to one who, without his fault, breaks the pipe by driving a traction engine over it and is injured by an explosion of the escaping gas." ' (Syl. ¶ 1.)

Another case, analogous in principle, is *Omslaer v. Philadelphia Co.,* 31 Fed. 354. The first section of the syllabus to this case is as follows:

"The defendant company, having authority under the laws of Pennsylvania to lay and maintain pipes for transportation of natural gas across the Allegheny river, laid an eight-inch main across and resting on the bed of the river, wholly exposed, so as to interfere with the free and safe passage of boats. *Held,* that the pipe should have been buried underneath the river bed, and as laid it was a wrongful obstruction to navigation."

Natural gas is a dangerous agency, whether ignited or not, and it is known to be as liable to explosion as powder when it comes in contact with fire, and that its destructive effect is almost as great. In *Hashman v. Gas Co.,* 83 Kan. 328, 111 Pac. 468, this court used this language:

"Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in safe condition, and to detect and repair any leaks or defects in them." (p. 331.)

In *Gas Co. v. Carter,* 65 Kan. 565, 70 Pac. 635, this court said:

"Defendant was employing for its profit a subtle and highly explosive agency. The rule at common law is that, where an agent so introduced is

Murphy v. Gas & Oil Co.

controllable by care, attention, or science, he who receives the benefit must assume the responsibility." (p. 568.)

Again, in *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032, this court, in speaking of the care required of gas companies, said:

"Care was required commensurate with the dangerous character of the agency and the consequences that ought to have been apprehended from its escape." (p. 872.)

The rules governing the handling of dangerous agencies should be applied in cases of this kind. In *Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320, this court said:

"The owner of so inherently dangerous a commodity as solidified glycerine is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty." (Syl. ¶ 2.)

Again, in *Wade v. Electric Co.*, 94 Kan. 462, 147 Pac. 63, this court said:

"Electric companies that suspend wires charged with a high voltage of electricity over or along the highway are required to exercise the highest care in constructing and maintaining their poles and wires so as to avoid injury to those using the highway for work, business and pleasure." (Syl. ¶ 1.)

We do not see how the defendant can be excused from the consequence of its act by showing that other persons engaged in the same business in the same community were guilty of similar acts.

(9) It is contended that the evidence as to the general custom of laying gas pipes in highways was admissible on the question of the plaintiff's contributory negligence; that whether or not the plaintiff or his father knew of the existence and location of the gas pipe, or in the exercise of ordinary care should have known thereof, was a material question, on which the jury should have been permitted to consider this evidence. The plaintiff had a right to assume that the highway was safe from one side to the other. He was under no obligation to make an examination of the highway for the purpose of ascertaining whether or not gas pipes were laid thereon. The evidence shows that neither the plaintiff nor his father knew of the existence of the gas pipe before the explosion.

"To be free from contributory negligence it is not necessary that one using a highway known by him to be defective exercise more than ordinary care, but he must adapt his conduct to that condition and employ such care as may justly be regarded as ordinary, in view of his knowledge of such defect." (*Cunningham v. Clay Township*, 69 Kan. 373, syl. ¶ 6, 76 Pac. 907.)

If the plaintiff had known that the gas pipe was in the public highway and had used ordinary care in attempting to drive his traction engine over it he would not have been guilty of contributory negligence, under *Cunningham v. Clay Township*, supra; *Telephone Co. v. Vandervort*, 71 Kan. 101, 79 Pac. 1068; and *Erie Township v. Beamer*, 71 Kan. 182, 79 Pac. 1070. Whether or not the plaintiff exercised ordinary care, after having knowledge, would have been a question for the jury. We do not think the evidence was competent for the purpose of showing contributory negligence on the part of the plaintiff.

We have examined every complaint made, and do not find anything warranting a reversal of the judgment in this case. Upon the whole, we are of the opinion that substantial justice has been done by the verdict of the jury, and that the defendant has no just ground for complaint on account of the verdict or the manner in which it was reached. The judgment is affirmed.